```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
ALEXANDER BIRAGOV and RENTARACE INC.,                            :
                                                                 :
                              Plaintiffs,                        :
                                                                 :     21 Civ. 483 (JPC)
            -v-                                                  :
                                                                 :     OPINION AND
                                                                 :         ORDER
DREAMDEALERS USA, LLC and PHEENIX INC.,                          :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

More than two years ago, a Nevada state court ordered Plaintiffs to turn over their website domain name to Defendant Dreamdealers USA, LLC after finding that the domain infringed Dreamdealers's trademarks. Yet Plaintiffs now contend that Defendants hijacked their website by complying with this order. Dreamdealers has moved to dismiss, arguing among other things that the Nevada case precluded Plaintiffs' claims. The Court agrees. Plaintiffs may not resurrect what another court killed. The Court therefore grants the motion and dismisses with prejudice Plaintiffs' federal claims against Dreamdealers on *res judicata* grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court further declines to exercise supplemental jurisdiction over Plaintiffs' claims against Dreamdealers under state law and dismisses those claims without prejudice.

## I. Background

**A. Consideration of Materials Outside the Complaint**

The Court begins with the threshold issue of what materials it may consider at this stage. In considering a motion to dismiss under Rule 12(b)(6), a court may consider not only the facts

alleged in the complaint but also "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff upon which it relied in bringing the suit." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (quotations omitted). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quotations omitted)). "[M]ere notice or possession," however, "is not enough." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quotations omitted). Besides documents incorporated by reference, a court "may consider documents of which a court may take judicial notice." *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 169 n.5 (2d Cir. 2018) (quotations omitted).

Dreamdealers asks the Court to take judicial notice of eleven different documents in considering its motion to dismiss. *See* Dkt. 30-3 at 3-4. Of those documents, the Court takes judicial notice of—and relies on—only the Nevada state court litigation documents, which are attached as Exhibits E, F, G, H, I, and J to the Declaration of Ismail Amin, Esq., counsel for Dreamdealers. *See Convergen Energy LLC v. Brooks*, No. 20 Civ. 3746 (LJL), 2020 WL 5549039, at *6 n.2 (S.D.N.Y. Sept. 16, 2020) ("The Court may take judicial notice of matters of public record, such as pleadings and court orders from prior litigation between the parties." (quotations omitted)).

**B. Parties**

Plaintiff Alexander Biragov is a Russian Federation resident who is the founder and Chief Executive Officer of Plaintiff Rentarace, Inc., a Delaware corporation with its principal place of business in New York City. Dkt. 2 ("Complaint") ¶¶ 12-13, 16. Rentarace aggregates service

providers that offer racecar driving experiences in the United States and abroad into a single website.  *Id.* ¶ 17.  Dreamdealers is a Nevada limited liability company with its principal place of business in Las Vegas.  *Id.* ¶ 14.[1]  Defendant Pheenix Inc. is a California corporation that serves as a domain name registrar and has its principal place of business in California.  *Id.* ¶¶ 5, 15.  Pheenix has not yet appeared in this matter nor, according to the docket, been properly served under Federal Rule of Civil Procedure 4(h).  *Compare* Dkt. 29 (ordering traditional service under Rule 4(h)), *with* Dkt. 36 (not complying with Rule 4(h)).

### C.  2017 Nevada Lawsuit

In October 2017, Dreamdealers sued Biragov and Rentarace in Nevada's Eighth Judicial District Court (the "Nevada Court") claiming that their website www.exoticracing.com (the "Hijacked Domain") violated Dreamdealers's trademarks (and was a deceptive trade practice).  Dkt. 30-2 ("Amin Decl."), Exh. E ("Nevada Complaint") at 1, ¶¶ 16, 109.  That is because Dreamdealers does business as Exotics Racing and owns the domain name www.exoticsracing.com.  *Id.* ¶¶ 4, 13, 16, 109.[2]  Dreamdealers brought claims for trademark infringement, cybersquatting, trademark dilution, deceptive trade practice, injunctive relief, and declaratory relief.  *Id.* ¶¶ 46-110.

In November 2017, the Nevada Court granted Dreamdealers a temporary restraining order (the "TRO") after a hearing.  *See* Amin Decl., Exh. F ("TRO"); *see also* Complaint ¶¶ 38, 69.  The TRO ordered the Hijacked Domain to be immediately transferred to Dreamdealers, required Biragov and Rentarace to disclose any domain names that used Dreamdealers's trademarks, enjoined them from registering or trafficking domain names similar to Dreamdealers's trademarks,

---

[1] The Complaint does not allege where Dreamdealers's members are domiciled.

[2] For clarity, the Court will use "Dreamdealers" instead of "Exotics Racing" when referring to this Defendant.

and enjoined them from using Dreamdealers's trademarks or any "confusingly similar variations thereof." TRO at 5. Pheenix—the registrar of the Hijacked Domain—then allegedly transferred the Hijacked Domain back to Dreamdealers. Complaint ¶ 72.

A month later, the Nevada Court granted Dreamdealers a preliminary injunction. Amin Decl., Exhs. G, H. Before doing so, the Nevada Court received and reviewed a submission that Biragov had filed opposing the preliminary injunction. *See* Amin Decl., Exhs. G-I.

In September 2019, the Nevada Court granted Dreamdealers's Amended Motion for Summary Judgment. Amin Decl., Exh. J. The Nevada Court granted Dreamdealers's claims for trademark infringement, false designation, cybersquatting, trademark dilution, and deceptive trade practice. *Id.* at 2. The Nevada Court also "permanently restrained and enjoined" Biragov and Rentarace from (1) "registering or trafficking in any domain name containing the [Dreamdealer] Marks" or any "confusingly similar variations" and (2) "using the [Dreamdealer] Marks or any confusingly similar variations thereof." *Id.* at 2-3.

Biragov and Rentarace did not appeal the adverse judgment from the Nevada Court. *See generally Dreamdealers USA, LLC* v. *Rentarace Group S.R.O.*, No. A-17-763361-B (Nev. Dist. Ct.).

D.  **Current Lawsuit**

On January 20, 2021, Plaintiffs initiated this case, bringing claims against Defendants that sound oddly familiar to those resolved by the Nevada Court: federal law claims against Dreamdealers for reverse domain hijacking under 15 U.S.C. § 1114(2)(D)(iv), for a declaratory judgment as to both Defendants that Plaintiffs lawfully used the Hijacked Domain under 15 U.S.C. § 1114(2)(D)(v), for a declaratory judgment that Plaintiffs did not infringe Dreamdealers's trademarks under 28 U.S.C. § 2201(a), and state law claims for tortious interference with a

contract, deceptive business practices, breach of contract, and unjust enrichment. Complaint ¶¶ 90-130. Three months later, Dreamdealers moved to dismiss the case, arguing that a litany of reasons warrants dismissal: lack of personal jurisdiction, preclusion by the Nevada Case, failure to state a claim, improper venue, and *forum non conveniens*. See Dkt. 30 ("Motion to Dismiss") at 2. Dreamdealers argues in the alternative that the Court should transfer the case to the United States District Court for the District of Nevada. *Id.*

## II.  Discussion

### A.  Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although a court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d. Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### B.  Issue Preclusion Bars Plaintiffs' Federal Claims

Federal courts have "leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quotations omitted). The principle underlying this discretion is that "jurisdiction is vital only if

the court proposes to issue a judgment on the merits." *Id.* (quotations omitted).  And so a federal court dismissing for a non-merits reason "need not resolve whether it has authority to adjudicate the cause (subject-matter jurisdiction) or personal jurisdiction over the defendant" when dismissing for a non-jurisdictional reason is the "less burdensome course." *Id.* at 425, 436.

The Supreme Court has recognized several threshold grounds to resolve a case that count as non-merits dismissals.  These grounds include: dismissing for *forum non conveniens*; declining to adjudicate state law claims on discretionary grounds; abstaining under *Younger v. Harris*, 401 U.S. 37 (1971); dismissing for lacking statutory standing; denying class certification; and dismissing suits against the Government based on covert espionage agreements under *Totten v. United States*, 92 U.S. 105 (1875).  *See Sinochem*, 549 U.S. at 431; *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999).  This list of threshold grounds is not exhaustive, however.  Instead, courts look to whether a particular ground "represents the sort of threshold question that may be resolved before addressing jurisdiction." *Sinochem*, 549 U.S. at 431 (quotations omitted).  In other words, courts look to see whether resolving the issue "does not entail any assumption by the court of substantive law-declaring power." *Id.* at 433.

In applying these principles, every circuit court to address the issue has recognized that *res judicata*—a doctrine grounded in the preclusive effect of judgments—represents the sort of threshold question that may be resolved before addressing jurisdiction. *See E. Coast Repair & Fabrication, LLC v. United States through Dep't of Navy*, 16 F.4th 87, 90 (4th Cir. Oct. 14, 2021); *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 861-62 (9th Cir. 2021); *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 277-78 (3d Cir. 2016).  That recognition makes sense.  To start, consider what the Supreme Court has said about the doctrine: "If the doctrine of res judicata is properly

applicable . . . the case may be disposed of *without reaching the merits of the controversy*." *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (emphasis added).

Also instructive is to examine the similarities between *forum non conveniens*, which *Sinochem* recognized as a non-merits decision, and *res judicata*. *Sinochem* held that resolving a *forum non conveniens* motion does not entail assuming "substantive law-declaring power" because it is simply "a determination that the merits should be adjudicated elsewhere." *Sinochem*, 549 U.S. at 432-33. In that same vein, *res judicata* is "a determination that the merits have *already* been adjudicated elsewhere." *Hoffman*, 837 F.3d at 277 (quotations and alterations omitted) (discussing claim preclusion); *see also Snoqualmie Indian Tribe*, 8 F.4th at 862 (discussing issue preclusion).

It therefore does not matter that to resolve *res judicata* issues on a dismissal motion a court must "consider[] the merits of the underlying dispute." *Snoqualmie Indian Tribe*, 8 F.4th at 862. Resolving many threshold questions, including personal jurisdiction and *forum non conveniens*, may "involve a brush with factual and legal issues of the underlying dispute." *Sinochem*, 549 U.S. at 433. But for all these threshold issues (including *res judicata*) courts need not "assume substantive law-declaring power to resolve the dismissal motion." *Snoqualmie Indian Tribe*, 8 F.4th at 862.

The Court therefore holds that a *res judicata* dismissal is a non-merits dismissal. And because for reasons that follow the Court can resolve the case on *res judicata* grounds, it does not reach whether it lacks personal jurisdiction over the case.[3]

The Court can decide this case on *res judicata* grounds because another court has already decided each of Plaintiffs' federal claims. As indicated above, the doctrine of *res judicata*

---

[3] The Court also does not decide whether the *Rooker-Feldman* doctrine—which Dreamdealers did not raise—strips the Court of jurisdiction over some (or all) of Plaintiffs' claims.

considers how a prior court's judgment affects later cases, examining the preclusive effect of judgments. *Res judicata* involves two doctrines: claim preclusion and issue preclusion. Here, Dreamdealers focuses on issue preclusion, which bars repetitive litigation of the same issue between the same parties. If two parties litigated an issue in a prior case, and a court necessarily decided the issue by entering a final judgment, then the losing party cannot relitigate the issue against the prevailing party in a later case. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

When the prior case took place in state court, federal courts "usually consult the preclusion laws of the state in which the judgment was issued." *Hanrahan v. Riverhead Nursing Home*, 592 F.3d 367, 369 (2d Cir. 2010). So to decide whether issue preclusion applies, the Court looks to Nevada law. Under Nevada law, "[t]he party seeking to apply issue preclusion bears the burden of proving that it applies." *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018). This requires the moving party to show: "[1] the issues in both cases are identical, [2] the first ruling was 'on the merits and final,' [3] the party against whom preclusion is sought was a party to or in privity with a party to the previous case, and [4] 'the issue was actually and necessarily litigated' in the previous case." *Id.* (quoting *Five Star Cap. Corp. v. Ruby*, 194 P.3d 709, 713 (Nev. 2008)) (alterations omitted).

Dreamdealers has satisfied all four requirements. First, the case in the Nevada Court and this case involve the same issues about the Hijacked Domain. Plaintiffs' federal claim for reverse domain name hijacking contends that Dreamdealers knowingly misrepresented to Pheenix "that the Hijacked Domain was identical to, confusingly similar to, or dilutive of Dreamdealers' trademarks." Complaint ¶ 90. This reverse domain hijacking claim and the first declaratory judgment claim seek injunctive relief to have the Court transfer back the Hijacked Domain to Rentarace because "Rentarace's registration and use of the Hijacked Domain was lawful."

*Id.* ¶¶ 95, 97-98.  The other declaratory relief claim asks this Court to declare that "Rentarace has not infringed Dreamdealers' trademark rights through Rentarace's registration and use of the Hijacked Domain," and for "a judicial determination of the parties' rights and duties with respect to the trademark rights asserted by Dreamdealers."  *Id.* ¶¶ 97,109-10.

But the Nevada Court already held that Rentarace infringed Dreamdealers's trademark.  *See* Amin Decl., Exh. J.  And Pheenix transferred the Hijacked Domain to comply with the Nevada Court's injunction.  Plus, the Nevada Court permanently enjoined Plaintiffs from "registering or trafficking in any domain name containing the [Dreamdealer] Marks . . . or any confusingly similar variations."  *Id.*  Because the Nevada Court already decided these issues, it does not matter that Plaintiffs bring different rights of action here: "issue preclusion may apply even though the [rights] of action are substantially different, if the same fact issue is presented."  *Five Star Cap. Corp.*, 194 P.3d at 712 (quotations and alterations omitted).

Second, Dreamdealers has established the second through fourth requirements for *res judicata* under Nevada law.  The Nevada Case granted summary judgment to Dreamdealers on the merits, which became a final judgment after Plaintiffs failed to appeal.  And in ruling for Dreamdealers, the Nevada Court decided the issues discussed above.  Plus, both Biragov and Rentarace were parties to the original case before the Nevada Court.  And those issues were actually and necessarily litigated before that court.

Yet Plaintiffs contend that they lacked "a full and fair opportunity to litigate the issues because Plaintiff Biragov was not represented by counsel, and the Nevada court did take into account his written position."  Dkt. 34 ("Opposition") at 9.  This Court cannot, in Plaintiffs' view, find an issue fully and fairly litigated when a *pro se* party fails to recognize an applicable defense in the prior case.  *See id.* at 9-10.  And according to Plaintiffs, the Nevada Court neither fairly nor

9

fully adjudicated the case because it supposedly "rubber-stamped" Dreamdealers's motions. *Id.* at 10.

But Plaintiffs' regret-for-proceeding-*pro se* argument finds no support in issue preclusion law. Nevada jurisprudence, like the federal common law, recognizes that issue preclusion "is based upon the sound public policy of limiting litigation by preventing a party who had one full and fair opportunity to litigate an issue from again drawing it into controversy." *Bower v. Harrah's Laughlin, Inc.*, 215 P.3d 709, 718 (Nev. 2009); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4423 (3d ed. 2017) ("The most general independent concern reflected in the limitation of issue preclusion by the *full and fair opportunity requirement* goes to the incentive to litigate vigorously in the first action." (emphasis added)). A party's *pro se* status does not affect the preclusive force of the Nevada Court's judgment. *See Bonnell v. Lawrence*, 282 P.3d 712, 718 (Nev. 2012) (rejecting claim that a *pro se* party could avoid the preclusive effect of a prior judgment because "[f]undamental rules governing the finality of judgments cannot be applied differently merely because a party not learned in the law is acting pro se" (quotations omitted)).[4] Nor do Plaintiffs show that the Nevada Court failed to fairly adjudicate the previous case. The Nevada court held hearings, gave notice for its orders, and Biragov submitted a declaration and briefing. *See* Amin Decl., Exh. G-J.

The Court therefore finds that the Nevada Court's judgment bars Plaintiffs' federal law claims against Dreamdealers and dismisses those claims with prejudice.

---

[4] The same principle is true for the federal common law. *See, e.g.*, *Lansing v. Wells Fargo Bank, N.A.*, 894 F.3d 967, 972 (8th Cir. 2018) ("Parties proceeding *pro se* are not exempt from the doctrine of claim preclusion."); *In re Tsamasfyros*, 940 F.2d 605, 607 (10th Cir. 1991) ("We reject any suggestion that because [the party] appeared *pro se* in the [prior] proceeding, collateral estoppel is inapposite.").

## C. The Court Declines Supplemental Jurisdiction

Because Plaintiffs may not litigate their federal law claims against Dreamdealers, the Court must decide whether it has diversity jurisdiction over the state law claims against Dreamdealers and, if not, whether to exercise supplemental jurisdiction over those claims. Supplemental jurisdiction allows federal courts to hear state law claims that do not meet the original jurisdiction requirements when those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c)(3), a court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction."

Here, the Court had original jurisdiction only over the federal claims against Dreamdealers. Plaintiffs have not pleaded diversity jurisdiction over the state law claims. For one, the Complaint does not allege where Dreamdealers's members are domiciled, so the Court cannot determine if the parties are diverse. *See Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("[A] limited liability company . . . takes the citizenship of each of its members.").

Plaintiffs also failed to meet the $75,000 amount-in-controversy requirement. *See* 28 U.S.C. § 1332(a). When the amount-in-controversy requirement is in dispute, a plaintiff "must demonstrate a reasonable probability" of satisfying the $75,000 threshold. *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223 (2d Cir. 2017). This burden is typically not an onerous one. Courts "recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (quotations omitted). Still, courts may look "to evidence outside of the pleadings" to determine whether a plaintiff met the required amount. *Id.* And "[a] defendant may rebut th[e] [good-faith pleading] presumption by

demonstrating to a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Id.* (quotations omitted).

Plaintiffs do claim that "[t]he amount in controversy exceeds $75,000." Complaint ¶ 10. But the record reflects that Plaintiffs could never recover that amount. Besides equitable relief, the Complaint seeks "[a]n order holding Defendants jointly and severally liable to Rentarace for damages, including enhanced and punitive damages, attorney's fees, and costs." Complaint at 19 ¶ A. Those damages would include the money that Plaintiffs paid for the Hijacked Domain and any related litigation costs. Yet Plaintiffs only claim that they paid $1,701 for the Hijacked Domain and that they incurred $1,513 in "court fees" from the Nevada Case. Complaint ¶¶ 21, 33; Amin Decl., Exh. J at 3.

The only other damages that Plaintiffs point to is "$30,000 to date" from "lost profits[] and reasonable attorney's fees." Opposition at 12. Plaintiffs admit, however, that these damages come only from its federal law reverse domain name hijacking claim. *See* Opposition at 11-12 (pointing to reverse domain name hijacking statute for additional damages); Complaint ¶¶ 90-95. Plaintiffs could never recover these damages, however, because this claim is barred, as discussed above. But even if the claim were not barred, Plaintiffs would not have met their burden—this $30,000 plus the other $3,214 would not exceed $75,000.[5]

---

[5] Attorney's fees may only count towards the jurisdictional amount in controversy if they are "recoverable as a matter of right." *Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972); *vacated on other grounds*, 409 U.S. 56 (1972); *accord Suarez v. Mosaic Sales Sols. US Operating Co., LLC*, 720 F. App'x 52, 55 (2d Cir. 2018); *Kimm v. KCC Trading, Inc.*, 449 F. App'x 85, 85-86 (2d Cir. 2012). None of Plaintiffs' claims against Dreamdealers under New York law involve mandatory attorney's fees. *See EVEMeta, LLC v. Siemens Convergence Creators Corp.*, 173 A.D.3d 551, 553 (N.Y. App. Div. 2019); *Porsch v. LLR, Inc.*, No. 18 Civ. 9312 (DLC), 2019 WL 3532114, at *3 (S.D.N.Y. Aug. 2, 2019); *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 461 (N.Y. App. Div. 2010); *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F. Supp. 3d 160, 164 (S.D.N.Y. 2015). The same is true for Plaintiffs'

Besides actual damages, Rentarace seeks "enhanced and punitive damages." When the law permits enhanced and punitive damages, they ordinarily may count toward the amount-in-controversy requirement. *See A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991); *Career Initiatives Corp. v. Palmer*, 893 F. Supp. 295, 296 (S.D.N.Y. 1995). But "in computing jurisdictional amount, a claim for punitive damages is to be given closer scrutiny . . . than a claim for actual damages." *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1033 n.1 (2d Cir. 1972); *accord Peoples Club of Nigeria Int'l, Inc. v. Peoples Club of Nigeria Int'l - New York Branch, Inc.*, 821 F. App'x 32, 35 (2d Cir. 2020). In fact, "[t]he use of punitive or exemplary damages to satisfy the amount in controversy requirement . . . triggers special judicial scrutiny." *Snyder v. Pleasant Valley Finishing Co.*, 756 F. Supp. 725, 732 (S.D.N.Y. 1990); *see also Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 263 (S.D.N.Y. 2017).

In applying this heightened scrutiny, Plaintiffs only seek enhanced and punitive damages for their federal claims. *See* Complaint ¶ 89. Plaintiffs view their Complaint in the same way. In arguing that they met the amount-in-controversy requirement, Plaintiffs never mention punitive or enhanced damages, which suggests that they only sought those damages for the dismissed federal claims. *See* Opposition at 11-13. Thus, Plaintiffs may not use enhanced or punitive damages to meet the amount-in-controversy requirement.

While the Court does not have diversity jurisdiction over the state law claims against Dreamdealers, it does have supplemental jurisdiction over those claims because they involve the same core nucleus of operative facts as the federal law claims. But because the Court has dismissed the federal law claims it declines to exercise supplemental jurisdiction: "In most circumstances, a

---

claim against Dreamdealers for unjust enrichment under California law. *See* Cal. Civ. Code § 1021; *id.* § 1033.5(a)(10); *Santisas v. Goodin*, 951 P.2d 399, 403-04 (Cal. 1998).

district court should decline supplemental jurisdiction if all federal claims have been dismissed at the pleading stage." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 130 (2d Cir. 2003), *as amended* (Apr. 16, 2003). Here, the traditional "values of judicial economy, convenience, fairness, and comity" do not favor exercising jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). This case is at an early stage, and discovery has not even begun. And although claims remain against Pheenix, Plaintiffs have not yet served Pheenix nor has Pheenix appeared. The Court therefore dismisses Plaintiffs' state law claims against Dreamdealers without prejudice to refiling in state court.[6] *See* 28 U.S.C. § 1367(c)(3); *Cho v. Osaka Zen Spa*, No. 19 Civ. 7935 (ER), 2021 WL 1736813, at *6 (S.D.N.Y. May 3, 2021) ("Although the Court has supplemental jurisdiction over the remaining state law claims against the Moving Defendants, it will decline to exercise this jurisdiction."); *Shi Ming Chen v. Hunan Manor Enter., Inc.*, No. 17 Civ. 802 (GBD), 2018 WL 1166626, at *9 n.4 (S.D.N.Y. Feb. 15, 2018) ("Having dismissed the only claims against Moving Defendants over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state and common law claims at this early stage in the litigation.").[7]

---

[6] Because the Court declines supplemental jurisdiction, the Court need not decide whether it has personal jurisdiction over the state law claims against Dreamdealers. *See Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) ("The fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so."); *Sun Life & Health Ins. Co. v. Colavito*, 14 F. Supp. 3d 176, 183 (S.D.N.Y. 2014) ("[T]he Court finds it unnecessary to decide [whether it actually has jurisdiction], because even if it [did] ha[ve] supplemental jurisdiction, it would decline to exercise it and dismiss the claim.").

[7] Because the Court dismisses the case on issue preclusion grounds coupled with declining supplemental jurisdiction, it does not reach the other grounds for dismissal raised by Dreamdealers. The Court also denies Dreamdealers's request for sanctions and attorney's fees. *See* Motion at 39-43. Although the Court notes its displeasure with Plaintiffs for trying to relitigate the Nevada Case, Dreamdealers did not argue that the state law claims were precluded. This case therefore does not strike the Court as an "exceptional case[]" under the Lanham Act. 15 U.S.C. § 1117(a).

### III. Conclusion

Plaintiffs have tried to relitigate a years-old Nevada state court case. For all the reasons given, issue preclusion bars Plaintiffs' federal law claims against Dreamdealers and the Court declines supplemental jurisdiction over the remaining state law claims against Dreamdealers. The Court therefore grants Dreamdealers's motion to dismiss and dismisses Plaintiffs' federal claims with prejudice and their state law claims without prejudice as to Dreamdealers. The Clerk of the Court is respectfully directed to terminate the motion pending at Docket Number 30 and terminate only Defendant Dreamdealers USA, LLC from the case.

SO ORDERED.

Dated: November 15, 2021
New York, New York

JOHN P. CRONAN
United States District Judge